**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HALLMARK SPECIALTY INSURANCE COMPANY, an Oklahoma Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.  14-cv-3657 |
| BRADFORD C. ROBERG, M.D.; NARENDRA K. GARG, M.D.; NARENDRA K. GARG, M.D., P.C. d/b/a CHICAGOLAND AESTHETICS, PC, an Illinois Corporation; AVICE NELSON; and RONALD NELSON, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Hallmark Specialty Insurance Company ("Hallmark" or "Plaintiff") filed a

Second Amended Complaint relating to three professional liability insurance policies that

Hallmark issued to Bradford C. Roberg, M.D. ("Dr. Roberg") for 2012 (the "2012 Policy"), 2013

(the "2013 Policy"), and 2014 (the "2014 Policy") (collectively, the "Policies"), respectively.

The Policies cover Dr. Roberg as the "Named Insured," and the medical group with which he is

affiliated — Narendra K. Garg, M.D. ("Dr. Garg") and Chicagoland Aesthetics, P.C.[1] — as

"Additional Insureds."  Hallmark seeks reformation of the 2013 and 2014 Policies based on an

alleged mutual mistake of the parties regarding the applicable retroactive date of those policies

with respect to Dr. Garg and Chicagoland Aesthetics.  In the event that the Court does not reform

the 2014 Policy, Hallmark requests in the alternative that the Court rescind the 2014 Policy due

---

[1] This entity is Narendra K. Garg, M.D., P.C. d/b/a Chicagoland Aesthetics, P.C. ("Chicagoland Aesthetics").

to alleged material misrepresentations that Dr. Roberg made to Hallmark in his application for that policy. Finally, Hallmark seeks a declaratory judgment that based on the Policies it has no duty to defend or indemnify Dr. Roberg, Dr. Garg, or Chicagoland Aesthetics in an underlying lawsuit pending in the Circuit Court of Cook County, Illinois, captioned *Avice Nelson, et al. v. Chicagoland Aesthetics, et al.*, No. 2014-L-003505 (the "Nelson Action").

Dr. Garg and Chicagoland Aesthetics[2], and Hallmark, have cross-moved for summary judgment. For the reasons below, the Court grants Plaintiff's motion for summary judgment in part, and denies Defendants' motion for summary judgment.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994)). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014) (quoting L.R. 56.1(a)(3)). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (quoting L.R. 56.1(b)(3)(B)). The

---

[2] Dr. Garg and Chicagoland Aesthetics are the only defendants who moved for summary judgment. The Court previously granted Hallmark's motion for entry of default against Dr. Roberg. (R. 38.) Additionally, Hallmark names Avice and Ronald Nelson as defendants only to the extent that they may have an interest in the issues in this action, and Hallmark seeks no affirmative relief from them. (R. 35, Sec. Am. Compl. ¶ 1.) Accordingly, the Court refers to Dr. Garg and Chicagoland Aesthetics collectively as "Defendants".

non-moving party also may submit a separate statement of additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support those facts.  *See* L.R. 56. 1(b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

## II.    Relevant Facts

Although the parties do not dispute many of the relevant facts, Defendants have failed to file a Local Rule 56.1 statement of undisputed material facts, and do not respond to Plaintiff's statement.  Accordingly, the Court relies heavily on Plaintiff's Local Rule 56.1 statement.  Dr. Garg is the sole shareholder of Chicagoland Aesthetics.  (R. 64, Pl.'s L.R. 56.1 Stmt. of Material Facts ("Pl.'s Stmt.") ¶ 12.)  Physicians at Chicagoland Aesthetics practice aesthetic medicine, including plastic surgery, at offices in Naperville, Schaumburg, and Chicago.  (*Id*. ¶ 11.)  On March 26, 2012, Dr. Garg, on behalf of Chicagoland Aesthetics, entered into an independent contractor agreement (the "Contractor Agreement") with Dr. Roberg.  (*Id*. ¶ 14.)  Under the Contractor Agreement, Dr. Roberg agreed to practice as a plastic surgeon for Chicagoland Aesthetics.  (*Id*. ¶ 14.)  Additionally, the Contractor Agreement required Dr. Roberg to purchase professional liability insurance that covered himself, Dr. Garg, and Chicagoland Aesthetics for his surgical practice.  (*Id*. ¶ 15.)

### A.    The Policies

Acting pursuant to the Contractor Agreement, Dr. Roberg entered into three professional liability insurance policies with Hallmark—one each for 2012, 2013, and 2014.  (*Id*. ¶¶ 6-8.) Each of the Policies listed Dr. Roberg as the Named Insured, and Dr. Garg and Chicagoland

Aesthetics as Additional Insureds[3].  (R. 64, Pl.'s Stmt. ¶¶ 22, 36, 47; R. 64, Pl.'s Stmt. Ex. B, at 37.)  The Policies are written on a "claims-made" basis, which means that they only cover claims[4] that are both made and reported to the insurance carrier within the policy period.  (R. 64, Pl.'s Stmt. ¶ 9); (R. 66, Pl.'s Memo, at 5.)  Additionally, the doctor must have rendered the professional services giving rise to the claim after the "retroactive date" specified in the policy.  (R. 64, Pl.'s Stmt. ¶ 9.)  Thus, for any of the Policies to provide coverage, the Insureds must have received the claim and then reported that claim to Hallmark within the policy period, and the doctor must have performed the medical procedure giving rise to the claim on or after the retroactive date.  (R. 66, Pl.'s Memo, at 6.)

### B.    Nelson Action

On September 27, 2013, Dr. Roberg performed a medical procedure on Avice Nelson ("Nelson") at Chicagoland Aesthetics.  (R. 64, Pl.'s Stmt. ¶ 61.)  Then, on November 22, 2013, counsel for Nelson faxed a letter to Chicagoland Aesthetics requesting Nelson's medical records (the "Nelson Request").  (*Id*. ¶ 63.)  Nelson subsequently filed a lawsuit on March 27, 2014 (the "Nelson Action").  (*Id*. ¶ 74.)  In her complaint, Nelson alleged professional malpractice against Dr. Garg, Dr. Roberg and Chicagoland Aesthetics relating to the medical care that they provided to her.  (*Id*. ¶ 75.)  Hallmark received a copy of the Nelson complaint on April 24, 2014.  (*Id*. ¶ 76.)  On May 19, 2014, Hallmark filed its original complaint in this Court.  (*Id*. ¶ 78.)

---

[3] In other words, Dr. Roberg and Hallmark are parties to the Policies, and Dr. Garg and Chicagoland Aesthetics are intended third-party beneficiaries.  *See State Farm Fire and Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 560, 914 N.E.2d 577 (1st Dist. 2009).

[4] The Policies define a "Claim" as "a written demand received by the Insured for damages or services, including the service of suit or institution of arbitration proceedings against any Insured arising out of professional services."  (R. 64-2, at 15.)

### C.     2012 Policy

It is undisputed that the 2012 Policy does not provide coverage for the Nelson Action because Nelson reported her claim to Dr. Roberg, Dr. Garg, and Chicagoland Aesthetics, and they reported it to Hallmark, in 2014.  (R. 61, Defs.' Mot., at 8.)  The parties agree that the policy period for the 2012 Policy is January 1, 2012 through January 1, 2013, and the retroactive date, for both the Named Insured (Dr. Roberg) and the Additional Insureds (Dr. Garg and Chicagoland Aesthetics), is January 1, 2012.  (R. 64, Pl.'s Stmt. Ex. B, at 4, 37.)  Although it is undisputed that the 2013 Policy does not provide coverage to Defendants for the Nelson Action, the parties dispute the retroactive date of the 2013 Policy for Defendants.  Finally, the parties dispute the retroactive date of the 2014 Policy for Defendants, and whether the 2014 Policy provides Defendants coverage for the Nelson Action.

### D.     2013 Policy

Plaintiff states the following facts with respect to the 2013 Policy.  In December of 2012, Dr. Roberg and Hallmark discussed pricing for the upcoming 2013 Policy[5].  (R. 64, Pl.'s Stmt. ¶ 28.)  On December 27, 2012, Hallmark offered Dr. Roberg the option to purchase a policy with a policy period from January 1, 2013 through January 1, 2014 and a retroactive date of January 1, 2012.  (*Id.*)  Hallmark offered a premium for this policy of approximately $40,000, depending on various options offered.  (*Id.*)  In response, Dr. Roberg indicated that he might be interested in rolling his retroactive date forward, which would result in a lower premium.  (*Id.* ¶ 30.)  Accordingly, on January 4, 2013, Hallmark provided a policy with the same policy period but a retroactive date of January 1, 2013 for Dr. Roberg.  (*Id.*)  The premium offered for this policy,

---

[5] Dr. Roberg and Hallmark did not communicate directly.  Dr. Roberg communicated with his retail brokers, John Cunningham, Debra Follis, and Kathy O'Neil of Cunningham Group, who communicated with Mike Magnuson and Megan McDonald of Cygnet Underwriting (the "Wholesale Broker"), who communicated with John Morris of Hallmark.  (R. 64, Pl.'s Stmt. ¶ 21.)

with a revised retroactive date, was approximately $20,000. (*Id*.) Hallmark would not issue this policy, however, until Dr. Roberg signed a statement confirming that he understood the limitations of the policy, including the revised retroactive date. (*Id*. ¶ 31.)

On January 11, 2013, Dr. Roberg provided a signed statement (the "2013 Acknowledgment") requesting that Hallmark issue the second quoted policy. (*Id*. ¶ 34.) In the 2013 Acknowledgment, Dr. Roberg recognized the limitations of the January 1, 2013 retroactive date:

> I have been offered a premium indication from Hallmark . . . with a retroactive date of January 1, 2012 for a premium of $37,681 to $41,868 which included coverage for claims made arising from professional services rendered on or after January 1, 2012.
>
> I have rejected this proposal in favor of an alternative indication requested by me from Hallmark . . . with a retroactive date of policy renewal January 1, 2013 for a premium of $18,725 to $21,167. . . I understand that in accepting this indication with a retroactive date of January 1, 2013 that I will have NO COVERAGE for claims made against me, any other Named Insured or Additional Named Insured for professional services rendered on or before December 31, 2012.

(*Id*. ¶ 34.) Dr. Roberg's application for the 2013 Policy also contained the following statement under the heading "NOTICE TO THE APPLICANT – PLEASE READ CAREFULLY":

> If the Applicant does not purchase prior acts coverage from the Company there will be no coverage with the Company for any claim, suit or circumstance based upon the rendering or failure to render professional services prior to the effective date of the Applicant's policy.

(*Id*. ¶ 26.)

On January 24, 2013, Hallmark issued the 2013 Policy. (*Id*. ¶ 35.) The 2013 Policy specified a policy period from January 1, 2013 through January 1, 2014 and a retroactive date of January 1, 2013 for Dr. Roberg. (R. 64, Pl.'s Stmt. Ex. C, at 4.)

The 2013 Policy included an Additional Insured Endorsement (the "2013 Endorsement") that contained language stating, "This Endorsement changes the Policy." (R. 64, Pl.'s Stmt. Ex.

C, at 26.)  The 2013 Endorsement added Dr. Garg and Chicagoland Aesthetics as additional

insureds.  (*Id*.)  The 2013 Endorsement, however, listed their retroactive date as January 1,

2012—not January 1, 2013.  (*Id*.)  Hallmark argues that the January 1, 2012 retroactive date is a

mutual mistake that is inconsistent with the parties' stated intentions, specifically Dr. Roberg's

2013 Acknowledgment.  (R. 64, Pl.'s Stmt. ¶ 48.)  Hallmark contends that the retroactive date for

all the insureds should be January 1, 2013.

### E.     2014 Policy

In December of 2013, Dr. Roberg and Hallmark discussed pricing for the upcoming 2014

Policy.  (R. 64, Pl.'s Stmt. ¶ 37.)  These discussions proceeded in a similar manner to the

discussions for the 2013 Policy.  Hallmark initially offered a more expensive policy with a

retroactive date of January 1, 2013, Dr. Roberg responded that he might be interested in rolling

his retroactive date forward, and then Hallmark provided a new quote for a less expensive policy

with a retroactive date of January 1, 2014.  (*Id*. ¶¶ 40-42.)  Again, Hallmark requested that Dr.

Roberg provide a signed statement confirming his understanding that the rolled retroactive date

limited the policy's coverage. (*Id*. ¶ 44.)  Dr. Roberg provided the requested statement ("2014

Acknowledgment"), which essentially mirrored the 2013 Acknowledgment except for the dates,

which were rolled forward one year, and asked Hallmark to issue the policy at the lower quoted

premium.  (*Id*. ¶ 45.)

On January 15, 2014, Hallmark issued the 2014 Policy.  (*Id*. ¶ 46.)  The 2014 Policy

specified a policy period from January 1, 2014 through January 1, 2015 and a retroactive date of

January 1, 2014 for Dr. Roberg.  (R. 64, Pl.'s Stmt. Ex. D, at 3.)  The 2014 Policy included an

Additional Insured Endorsement (the "2014 Endorsement") adding Dr. Garg and Chicagoland

Aesthetics as Additional Insureds.  (R. 64, Pl.'s Stmt. Ex. D, at 23.)  The 2014 Endorsement

again listed a retroactive date of January 1, 2012 for Dr. Garg and Chicagoland Aesthetics — not

January 1, 2014. (R. 64, Pl.'s Stmt. Ex. D, at 3, 23.) Hallmark contends that the January 1, 2012 retroactive date was also a mutual mistake. (R. 64, Pl.'s Stmt. ¶ 54.) Hallmark states that throughout this time it did not realize that the 2013 and 2014 Policies listed the retroactive date for Dr. Garg and Chicagoland Aesthetics' as January 1, 2012. (*Id*. ¶¶ 48, 54, 77.) It only realized the mistake after it received notice of the Nelson action. (*Id*. ¶ 77.)

Finally, in applying for the 2014 Policy, Dr. Roberg completed a renewal application (the "2014 Renewal Application"), and submitted a separate statement in which he denied knowledge of any circumstances or requests for medical records which might result in a claim (the "Statement of No Known Claims"). (*Id*. ¶¶ 67, 70.) The 2014 Application contained the following two questions:

> **In the past 12 months**
> . . .
> **3.** Are you aware of any specific act, omission, or circumstance involving particular and specific professional service(s) that may result in a claim that has not been reported to a prior insurance carrier?
>
> **4.** Have you had any requests for medical records by a patient or his/her attorney which might result in a claim?

(*Id*. ¶ 67.) Additionally, the 2014 Application contained a "NOTICE TO THE APPLICANT" section that stated, "[f]or the purpose of this application, the undersigned authorized agent . . . declares that to the best of his/her knowledge and belief, after reasonable inquiry, the statements in this application . . . are true and complete." (*Id*. ¶ 68.) Dr. Roberg answered "No" in response to questions three and four above. (*Id*. ¶ 67.) The 2014 Renewal Application is dated November 29, 2013—seven days after Nelson's attorneys faxed the Nelson Request to Chicagoland Aesthetics requesting Nelson's medical records. (*Id*. ¶¶ 63, 67.) In the Statement of No Known Claims, Dr. Roberg also affirmed that he had "no knowledge or information relating to a medical incident which could reasonably result in a claim" and "no knowledge of any request for medical

records which might result in a claim." (*Id*. ¶ 70.)  The Statement of No Known Claims is dated

January 8, 2014.  (*Id*.)  Thus, Hallmark contends that Dr. Roberg failed to accurately answer the

2014 Application and Statement of No Known Claims.

### F.    Defendants' Facts

Although Defendants fail to submit a Local Rule 56.1 Statement or a response to

Plaintiffs' Statement, in their motion for summary judgment Defendants include a "Statement of

Facts" that cites to the factual record.  In their Statement of Facts, and in Defendants' briefing in

response to Plaintiff's motion, Defendants contest some of the facts asserted by Plaintiff.

Defendants state that although Dr. Roberg may have intended to roll forward his own retroactive

dates, he did not intend to roll forward the retroactive dates for Dr. Garg or Chicagoland

Aesthetics.  (R. 61, Defs.' Mot., at 9.)  Additionally, Defendants contend that when Dr. Roberg

signed the 2013 and 2014 Acknowledgments in which he acknowledged the lack of retroactive

coverage for the 2013 and 2014 Policies, he did not intend for those statements to apply to Dr.

Garg or Chicagoland Aesthetics.  (R. 73, Defs.'s Resp., at 4.)  The 2013 and 2014 Endorsements

refer to Dr. Garg and Chicagoland Aesthetics as the "Additional Insured[s]."  (R. 64, Pl.'s Stmt.

Ex. C, at 26; R. 64, Pl.'s Stmt. Ex. D, at 23.)  In contrast, the 2013 and 2014 Acknowledgments

only refer to "Additional Named Insured[s]."  (R. 64, Pl.'s Stmt. ¶¶ 34-45.)  Defendants contend

that since Dr. Garg and Chicagoland Aesthetics are Additional Insureds, not Additional Named

Insureds, the 2013 and 2014 Acknowledgements do not apply to their coverage.

Defendants also argue that Dr. Roberg's statements in the 2014 Application and

Statement of No Known Claims were accurate.  Defendants contend that Dr. Roberg was not

aware of Nelson's counsel's request for medical records, and that even if Dr. Roberg had been

aware of it he would not have reasonably believed that the request might result in a claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining summary judgment motions, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). "The party seeking summary judgment has the burden of establishing that no genuine dispute exists as to any material fact." *Kvapil v. Chippewa County, Wis.*, 752 F.3d at 712 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the opposing party "must establish some genuine issue for trial such that a reasonable jury could return a verdict in [their] favor." *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (quoting *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012)).

## ANALYSIS

Both parties move for summary judgment. Defendants argue that the 2014 Policy should apply as written including the January 1, 2012 retroactive date for Dr. Garg and Chicagoland Aesthetics. Defendants also move for summary judgment on several of their affirmative defenses. In Plaintiff's motion for summary judgment, it makes two main arguments. First, it seeks reformation of the 2013 and 2014 Policies to change the retroactive dates for the Additional Insureds Dr. Garg and Chicagoland Aesthetics from January 1, 2012 to January 1, 2013 for the 2013 Policy, and from January 1, 2012 to January 1, 2014 for the 2014 Policy,

based on the doctrine of mutual mistake. Second, and in the alternative, Hallmark argues that the Court should order rescission of the 2014 Policy because of Dr. Roberg's material misstatements in connection with the issuance of that policy. Because Hallmark's motion is based on the Court rescinding or reforming the Policies, and Defendants' arguments are based on the Court applying the Policies as written, the Court first addresses Hallmark's arguments. Specifically, the Court addresses Hallmark's reformation argument first, then turns to Defendants' affirmative defenses.

## I.      Reformation

Hallmark first argues that the Court should grant it summary judgment on its claims for reformation of the 2013 and 2014 Policies. Under Illinois law, which the parties do not dispute applies, "[t]he purpose of an action for reformation is to change a written instrument by inserting some omitted provision or deleting some existing provision so that the document conforms to the original agreement of the parties." *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869, 885 N.E.2d 350 (1st Dist. 2008). "[I]nsurance policies may be reformed for the same reasons as any other written contract. Normally contracts are to be taken at face value, and the written agreement is presumed to express the parties' intent. In certain cases, however, this presumption may be rebutted, and the court may at times step in and reform the contract." *Bd. of Trustees of Univ. of Ill. v. Ins. Corp. of Ireland, Ltd.*, 969 F.2d 329, 332 (7th Cir. 1992) (citations omitted). "Reformation of a contract should only be allowed when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or a mistake by one party and fraud by the other." *Id*. (quoting *Magnus v. Barrett*, 197 Ill. App. 3d 931, 935, 557 N.E.2d 252 (1st Dist. 1990)). "An insurer seeking reformation of an insurance policy is required to make a clear showing of what the insured intended to procure from the insurer, in addition to the insurer's

knowledge of that intention based upon express directions from the insured or the insurer's knowledge of circumstances wholly inconsistent with the policy provisions as issued." *Zannini v. Reliance Ins. Co. of Illinois, Inc.*, 147 Ill.2d 437, 450, 590 N.E.2d 457, 168 Ill.Dec. 820 (Ill. 1992).

Here, Plaintiff argues that the evidence is "clear and convincing" that both Hallmark and Dr. Roberg—the parties to the contracts—intended that the 2013 and 2014 Policies contain retroactive dates for the Additional Insureds of January 1, 2013 and January 1, 2014, respectively. First, Hallmark relies on the testimony of John Morris, who served as Hallmark's underwriter in connection with the 2013 and 2014 Policies. (R. 64, Pl.'s Stmt. ¶ 18.) Morris submits a sworn declaration in which he states that Hallmark mistakenly listed the retroactive date as January 1, 2012 in the 2013 and 2014 Policies. (*Id.* ¶¶ 48, 54.) Morris declares that in his 44 years of experience as an underwriter, he has never issued a policy with an earlier retroactive date for an additional insured than for the named insured. Further, he states that he "would never consider issuing such a policy absent a specific request from the prospective insured, and only then under very unusual circumstances." (R. 64, Pl.'s Stmt. ¶ 59, Ex. A.) Finally, Morris declares that even if Hallmark were to issue a policy with an earlier retroactive date for the additional insured than for the named insured, Hallmark would require a higher premium to account for the additional prior acts coverage for the additional insureds. (R. 64, Pl.'s Stmt. ¶ 60.)

Hallmark argues that for both the 2013 and 2014 Policies, Dr. Roberg clearly rejected prior acts coverage and confirmed that the policy he intended to purchase would provide no coverage prior to January 1, 2013 and January 1, 2014 for the 2013 and 2014 Policies, respectively. With respect to the 2013 Policy, Hallmark offered Dr. Roberg the option to

purchase a policy with a policy period from January 1, 2013 through January 1, 2014 and a retroactive date of January 1, 2012. (R. 64, Pl.'s Stmt. ¶ 28.) The premium offered for this policy was around $40,000 depending on the options. (*Id.*) In response, Dr. Roberg indicated that he might be interested in rolling his retroactive date forward, which would result in a less expensive premium. (*Id.* ¶ 30.) Accordingly, Hallmark provided a policy with the same policy period but with a retroactive date of January 1, 2013 for Dr. Roberg. (*Id.*) Hallmark offered a premium for this policy, with the revised retroactive date, of approximately $20,000. (*Id.*) Hallmark would not issue this policy, however, until Dr. Roberg signed a statement confirming that he understood the limitations of the policy, including the revised retroactive date. (*Id.* ¶ 31.)

Accordingly, Dr. Roberg provided the 2013 Acknowledgment, in which he recognized the limitations of the January 1, 2013 retroactive date:

> I have been offered a premium indication from Hallmark . . . with a retroactive date of January 1, 2012 for a premium of $37,681 to $41,868 . . . which included coverage for claims made arising from professional services rendered on or after January 1, 2012.
>
> I have rejected this proposal in favor of an alternative indication requested by me from Hallmark . . . with a retroactive date of policy renewal January 1, 2013 for a premium of $18,725 to $21,167. . . I understand that in accepting this indication with a retroactive date of January 1, 2013 that I will have NO COVERAGE for claims made against me, any other Named Insured or Additional Named Insured for professional services rendered on or before December 31, 2012.

(*Id.* ¶ 34). Dr. Roberg's application for the 2013 Policy also contained the following statement under the heading "NOTICE TO THE APPLICANT – PLEASE READ CAREFULLY":

> If the Applicant does not purchase prior acts coverage from the Company there will be no coverage with the Company for any claim, suit or circumstance based upon the rendering or failure to render professional services prior to the effective date of the Applicant's policy.

(*Id.* ¶ 26.)

With respect to the issuance of the 2014 Policy, the discussions between Hallmark and Dr. Roberg proceeded along similar lines.  Hallmark initially offered a more expensive policy with a retroactive date of January 1, 2013, Dr. Roberg responded that he might be interested in rolling his retroactive date forward, and then Hallmark provided a new quote for a less expensive policy with a retroactive date of January 1, 2014.  (R. 64, Pl.'s Stmt. ¶¶ 40-42.)  Again, Hallmark requested that Dr. Roberg provide a signed statement confirming his understanding that the rolled retroactive date limited the policy's coverage. (*Id*. ¶ 44-45.)  Dr. Roberg provided the requested statement, the 2014 Acknowledgment, which essentially mirrored the 2013 Acknowledgment except for the dates, which were rolled forward one year, and requested that Hallmark issue the policy without prior acts coverage at the lower quoted premium.  (*Id*. ¶ 45.) Dr. Roberg's application for the 2014 Policy also contained the same notice as the application for the 2013 Policy that "[i]f the Applicant does not purchase prior acts coverage from the Company there will be no coverage with the Company for any claim, suit or circumstance based upon the rendering or failure to render professional services prior to the effective date of the Applicant's policy."  (*Id*. ¶ 68.)

Although Hallmark and Dr. Roberg did not expressly discuss the retroactive dates for the Additional Insureds in the 2013 or 2014 Policies and Hallmark's numerous warnings did not specifically mention them, Hallmark presents compelling evidence that Dr. Roberg would not have understood the 2013 and 2014 Policies to provide retroactive coverage for any insured party, including Dr. Garg or Chicagoland Aesthetics, for events that took place before January 1, 2013, or January 1, 2014, respectively.  Dr. Roberg also did not ask Hallmark whether the 2013 or 2014 Policies would provide prior acts coverage to Chicagoland Aesthetics or Dr. Garg, nor did he ever request that the 2013 or 2014 Policies provide such prior acts coverage.

In response, Defendants argue that the best evidence of Hallmark's understanding of the 2013 and 2014 Policies is their actual language. Defendants argue that it was Hallmark rather than Defendants or Dr. Roberg that inserted the inaccurate retroactive dates into the 2013 and 2014 Endorsements, and that it was Hallmark's responsibility to issue accurate documents. Defendants also cite the deposition testimony of Hallmark's underwriter John Morris that the "wording in a policy stands on its own." (R. 73, Defs.' Resp., at 13.) These arguments ignore the rationale for reformation, however, which is that the wording of an agreement should not stand on its own where the parties agreed to a different provision than what is contained in their agreement. *See Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d at 869 ("The purpose of an action for reformation is to change a written instrument by inserting some omitted provision or deleting some existing provision so that the document conforms to the original agreement of the parties.")

Further, the evidence that Defendants submit to support their argument that Dr. Roberg did not agree to later retroactive dates for the Additional Insureds in the 2013 and 2014 Endorsements is not sufficient to create a genuine issue of material fact. Importantly, Defendants do not point to any evidence that Dr. Roberg intended for the retroactive dates for Dr. Garg and Chicagoland Aesthetics to be January 1, 2012. In contrast, Hallmark highlighted specific evidence to support its argument that both Hallmark and Dr. Roberg intended for the retroactive dates for the Additional Insureds to be the same as the later retroactive dates for Dr. Roberg.

Instead of submitting evidence that Dr. Roberg intended for the retroactive date to be January 1, 2012, Defendants only posit a few speculative facts. Defendants first reference the deposition testimony of John Cunningham ("Cunningham"). Cunningham was the insurance

broker for Dr. Garg and Chicagoland Aesthetics, and he assisted Dr. Roberg in obtaining the Policies. Cunningham testified that in the "extremely soft" insurance market at the time Hallmark issued the Policies, it was common for an underwriter to include "bonus coverage." (R. 64-8, at 19-20.) Thus, Defendants argue that Hallmark could have set the earlier retroactive date for Dr. Garg and Chicagoland Aesthetics intentionally to provide them with gratuitous "bonus coverage." Defendants also emphasize that Hallmark does not have a prohibition on providing a different retroactive date for an additional insured than for the named insured. This type of speculation simply does not rise to the level required to create a genuine issue of material fact to defeat summary judgment. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[S]peculation may not be used to manufacture a genuine issue of fact." (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001))).

Defendants also note that Cunningham believed based on the language in the 2013 and 2014 Policies that the retroactive date for the Additional Insureds was January 1, 2012. (R. 61, Defs.' Mot., at 7.) Once Hallmark issued the 2013 Policy, for example, Cunningham noticed that it listed the retroactive date as January 1, 2012 for the Additional Insureds. (R. 64-8, at 10.) Based upon that stated retroactive date, it was Cunningham's understanding that Hallmark was providing coverage to Dr. Garg and Chicagoland Aesthetics dating back to January 1, 2012 for the conduct of Dr. Roberg. (R. 61, Defs.' Mot., at 7.) Defendants do not argue, however, that Dr. Roberg believed the retroactive date for the Additional Insureds was January 1, 2012, that the Court should impute Cunningham's understanding of the terms of the parties' agreement to Dr. Roberg, or that Cunningham's knowledge shows that there was not a mutual mistake between Dr. Roberg and Hallmark. Defendants also do not argue that their understanding of the Policies

(either independently or through Cunningham) defeats Hallmark's argument that there was a mutual mistake between Dr. Roberg and Hallmark—the parties to the contracts.

Thus, the Court is left with the following evidence viewed in the light most favorable to Defendants. Hallmark submits persuasive testimony from John Morris that it believed the retroactive dates for the Additional Insureds in the 2013 and 2014 Policies were January 1, 2013 and January 1, 2014, respectively, but that Hallmark mistakenly inserted January 1, 2012 as the retroactive date in both Policies. Hallmark also submits uncontroverted evidence that Dr. Roberg had no reason to believe that the retroactive date for any insured party in the 2013 and 2014 Policies would have been any date other than January 1, 2013 or January 1, 2014, respectively. In response, Defendants can only speculate that Hallmark may have included the January 1, 2012 retroactive date as additional "bonus coverage," and that Hallmark's internal guidelines do not specifically prohibit issuing a policy with an earlier retroactive date for an additional insured than for a named insured. Accordingly, the Court finds as a matter of law that Hallmark presents "clear and convincing" evidence that there was a mutual mistake between Dr. Roberg and Hallmark as to the retroactive date for the Additional Insureds. There is no genuine issue of material fact.

## II.     Defendants' Affirmative Defenses

Next, Defendants argue that their affirmative defenses of estoppel, waiver, and laches should apply to prevent Hallmark from prevailing on its motion for summary judgment. Defendants also cross-move for summary judgment on their estoppel and laches defenses. The Court addresses each of Defendants' affirmative defenses in turn.

**A. Estoppel**

First, Defendants argue that estoppel prevents Hallmark from reforming the 2013 and 2014 Policies to exclude Defendants from receiving coverage as Additional Insureds. "A party claiming the benefit of estoppel must prove reasonable reliance upon the acts or representations of the party sought to be estopped, without knowledge of or convenient means of learning the true facts." *RLI Ins. Co. v. Ill. Nat'l Ins. Co.*, 335 Ill. App. 3d 633, 645, 781 N.E.2d 321 (1st Dist. 2002). The party claiming estoppel must also show that the other party's actions or representations caused it prejudice. *Id*. In support of this argument, Defendants rely mainly on *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill.2d 46, 51, 906 N.E.2d 520, 329 Ill.Dec. 322 (Ill. 2009). As Plaintiff points out, however, in that case the plaintiff attempted to affirmatively assert a cause of action for promissory estoppel against the defendants, not an affirmative defense. *Id*. at 49. After holding that promissory estoppel is a valid cause of action in Illinois, the Illinois Supreme Court remanded the case for a determination of whether the plaintiff's promissory estoppel claim could survive summary judgment. *Id*. at 59, 61.

Here, Defendants assert estoppel not affirmatively, but defensively to prevent Hallmark from reforming the 2013 and 2014 Policies.[6] In *National Ben Franklin Insurance Co. v. Davidovitch*, the court held that an insurance company could not reform a policy as to an additional insured based on a mutual mistake in the policy between the insurance company and the hospital at which the additional insured worked. *National Ben Franklin Ins. Co. v. Davidovitch*, 123 Ill. App. 3d 88, 89-90, 92, 462 N.E.2d 696 (1st Dist. 1984). Reforming the policy would have excluded the additional insured from receiving coverage, and the insurance

---

[6] The Court requested that each party submit supplemental briefing specifically on whether the doctrine of estoppel can prevent an insurance company from reforming an insurance policy to exclude additional insureds from receiving coverage. (R. 85.) The Court also directed the parties to *National Ben Franklin Insurance Co. v. Davidovitch*, 123 Ill. App. 3d 88, 462 N.E.2d 696 (1st Dist. 1984).

company had defended the additional insured for over two years in an underlying malpractice lawsuit without reserving its rights to later assert insurance coverage defenses against him.  *Id*. at 92.  *Davidovich*, however, is based on a line of cases holding that where an insurer fails to take certain actions when a third party files an underlying lawsuit against an insured, the insurer is estopped from later asserting policy defenses to coverage.  The Illinois Supreme Court has held that:

> The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured.  Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage.  If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage.

*Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 150-51, 708 N.E.2d 1122, 237 Ill.Dec. 82 (Ill. 1999); *see also RLI Ins. Co.*, 335 Ill. App. 3d at 645 ("Where the insurer's assumption of the defense has induced the insured to surrender his right to control his or her own defense, he or she has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage.")  In other words, if the insurer defends an insured doctor in an underlying malpractice lawsuit without reserving its rights to assert coverage defenses against the doctor, estoppel can prevent the insurer from later attempting to reform its insurance policy to exclude the doctor from receiving coverage.

In response, Defendants argue that estoppel does not prevent reformation of an insurance policy only where the insurance company defended the insured in an underlying lawsuit without reserving its rights.  Defendants contend that just as the additional insured in *Davidovitch* detrimentally relied on the insurance company's defense of his underlying lawsuit, here Defendants detrimentally relied on Hallmark's representations regarding the retroactive dates as

to them in the 2013 and 2014 Policies.  Defendants, however, do not cite a single case for the proposition that estoppel can apply to prevent an insurance company from reforming a contract against an additional insured where the insurance company did not assume the additional insured's defense in the underlying action, and promptly filed a declaratory judgment action.  *See also L.E. Myers Co. v. Harbor Ins. Co.*, 67 Ill. App. 3d 496, 503 (1st Dist. 1978) ("in cases involving insurance policies, reformation has been permitted although it would extinguish the accrued rights of beneficiaries.")  Here, Hallmark has not represented Defendants in the underlying Nelson lawsuit.  Hallmark also acted promptly to file this action to assert its rights once it discovered that it had issued the 2013 and 2014 Policies with a mistaken retroactive date. Defendants do not contend, nor could they, that they have suffered prejudice based on Hallmark's failure to file a declaratory judgment action to clarify the Policies.

Finally, "a party claiming the benefit of estoppel must prove reasonable reliance upon the acts or representations of the party sought to be estopped, without the knowledge of or convenient means of learning the true facts."  *RLI Ins. Co. v. Ill. Nat'l Ins. Co.*, 335 Ill. App. 3d at 645.  Defendants do not present any evidence that they relied directly upon the retroactive dates of their coverage listed in the 2013 and 2014 Policies.  Instead, they state that they relied on their insurance broker, John Cunningham, who advised them that the 2013 and 2014 Policies provided them with appropriate coverage[7].  (R. 61, Defs.' Mot., at 12-13; R. 87, Defs.' Supp.

---

[7] The following exchange, for example, took place at Dr. Garg's deposition:

Q.  Did John Cunningham ever explain to you anything about Dr. Roberg's insurance policy?
A.  No.

Q.  He never explained any of the terms of the insurance policies purchased by Dr. Roberg?
A.  My discussion with John Cunningham was limited to the extent that, John, make sure that he has [*sic*] insurance policy and make sure that its effective and make sure it is not canceled at the time and [*sic*] adequately covered.

(R. 64-5, at 13.)

Resp. at 3.) Cunningham, however, also served as the intermediary between Dr. Roberg and Hallmark—Dr. Roberg only communicated with Hallmark through Cunningham. (R. 64, Pl.'s Stmt. ¶ 21.) Thus, Dr. Roberg submitted the 2013 and 2014 Applications and all the related paperwork discussed above through Cunningham. Cunningham also agreed at his deposition that after Dr. Roberg submitted the 2013 Application, Cunningham "didn't know one way or the other what coverage" the 2013 Policy would provide to the Additional Insureds. (R. 64-8, at 10.) It was only after Hallmark issued the 2013 Policy that Cunningham believed the retroactive date for Defendants was January 1, 2012. *Id*. Accordingly, this is not an instance where Defendants had no means of knowing that there may have been a mutual mistake between the parties.

For these reasons, the Court denies Defendants' objection to Plaintiff's motion for summary judgment based on estoppel, and also denies Defendants' cross-motion for summary judgment on estoppel.

## B.  Waiver

Next, Defendants argue that the doctrine of waiver should apply to prevent Hallmark from reforming the 2013 and 2014 Policies. Defendants' cursory, single paragraph argument is not persuasive. Defendants state that "waiver is the intentional relinquishment or abandonment of a known right." *People v. Blair*, 215 Ill.2d 427, 444 n.2, 831 N.E.2d 604, 294 Ill.Dec. 654 (2005) (quotation omitted). They then argue that Hallmark waived its right to deny coverage to Dr. Garg and Chicagoland Aesthetics by issuing the Policies with a retroactive date of January 1, 2012 as to them. As Hallmark notes, however, if Defendants' theory of waiver was correct, an insurance company could never seek to reform a policy based on mutual mistake. Hallmark also acted promptly to assert its rights once it discovered that it had issued the 2013 and 2014 Policies

with a mistaken retroactive date.  Accordingly, the Court denies Defendants' objection to

Plaintiff's motion for summary judgment based on the doctrine of waiver.

### C.  Laches

Finally, Defendants assert that the doctrine of laches should bar Hallmark from reforming

the 2013 and 2014 Policies.  Defendants make this argument both in response to Hallmark's

motion for summary judgment, and affirmatively in Defendants' own motion for summary

judgment.  Defendants argue that courts apply the doctrine of laches where granting a plaintiff's

requested relief would be inequitable and unjust because of the plaintiff's delay in asserting its

rights.  In support of this theory, Defendants cite an 1884 decision from the Illinois Supreme

Court, *Stinger v. Bent*, 111 Ill. 328 (1884).

The Court agrees without Hallmark that the doctrine of laches does not apply here.  As

discussed above, Hallmark submits evidence that it acted promptly to bring this action to clarify

its rights once it discovered that it it had issued the 2013 and 2014 Policies with a mistaken

retroactive date.  Although Defendants argue that Hallmark should not be allowed to bring a

claim to reform its agreement with Dr. Garg and Chicagoland Aesthetics only after it has denied

their claim, Defendants do not cite any legal authority for this proposition.  Defendants also do

not submit any evidence that Hallmark knew of the mistake earlier, and do not show that

Hallmark delayed asserting its rights once it discovered the mistake.  Thus, the Court denies

Defendants' objection to Hallmark's motion for summary judgment based on the doctrine of

laches, and denies Defendants' motion for summary judgment on this basis as well.

### III.    Declaratory Relief

For the reasons detailed above, the Court grants Hallmark's motion for summary

judgment to reform the 2013 and 2014 Policies, and denies Defendants' motion for summary

judgment.  Because the Court grants Hallmark's motion for summary judgment on its reformation counts, it need not make any findings with respect to Hallmark's additional claim for rescission.  With respect to Hallmark's motion for summary judgment on its declaratory judgment counts, the Court grants Hallmark's motion for summary judgment that it does not owe Dr. Roberg, Dr. Garg, or Chicagoland Aesthetics a duty to defend them or pay a judgment or settlement on their behalf in the Nelson Action under the 2014 Policy.  The reformed 2014 Policy provides a retroactive date of January 1, 2014, and Defendants do not contest that the events underlying the Nelson Action took place in 2013.  The Court also grants Hallmark's motion with respect to its declaratory judgment counts on the 2012 and 2013 Policies. Defendants do not oppose Hallmark's motion on those counts, and because Nelson did not assert her claim until 2014 those Policies do not provide Dr. Roberg, Dr. Garg, or Chicagoland Aesthetics with coverage.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment in part, and denies Defendants' motion for summary judgment.


**DATED:  September 2, 2015**                    **ENTERED**

AMY J. ST. EVE
U.S. District Court Judge